**In the Matter of Lawrence KAISER, as Trustee of the Estates of Telemark Management Company, Inc., et al., Debtors.**

**Appeal of Sheila WISE and Anthony Wise.**

**No. 85–1732.**

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1986.

Decided May 13, 1986.

Rehearing and Rehearing En Banc Denied June 12, 1986.

Anthony Wise, pro se.

Stephen H. Cohen, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for appellee.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The appellants in this bankruptcy matter, Mr. and Mrs. Wise, are the sole owners of a group of corporations that we shall refer to collectively as "Telemark" and that own a resort and associated recreational facilities (including a theme park called "Historyland") in northwestern Wisconsin. Telemark went broke and passed into the control of a trustee, the appellee in this case, under Chapter 7 of the Bankruptcy Code. The trustee claimed that some property formally or nominally owned by the Wises rather than by Telemark—in particular, four parcels of land on which "Historyland" is built and several hundred pieces of furniture, equipment, and artwork (chairs, ladders, signs, some Indian artifacts, etc.)—was actually part of the bankrupt estate. The bankruptcy judge agreed, and so did the district judge, to whom the Wises first appealed; now they appeal to us. (Other categories of property are involved in the appeal, but they either are no longer in issue or present a much clearer case for inclusion in the estate; we shall not have to discuss them separately.) The bankruptcy judge's order, although it did not wind up the whole bankruptcy proceeding, disposed finally of the controversy between the trustee and the Wises over who has the right to the property in question, and was thus an appealable order. See *In re Barker*, 768 F.2d 191, 192–94 (7th Cir.1985); *Bestmann v. Nicola*, 720 F.2d 484, 486 (8th Cir.1983).

The trustee had a buyer for Telemark who was prepared to pay some $5 million; but when we granted a stay (herewith dissolved) pending this appeal, the deal fell through, though we are told the buyer is still interested. Telemark's total liabilities are about $13 million. The trustee was operating Telemark as a resort until the stay was granted. Telemark has now closed but if bought will be reopened.

The Bankruptcy Code provides that the bankrupt estate includes "all legal or equitable interests of the debtor in property as of the time of the commencement of the case." 11 U.S.C. § 541. We must decide whether the debtor (Telemark) was the equitable owner of the land and personal property in question under Wisconsin law. The rights enforced in bankruptcy are rights created by state law, *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), in this case Wisconsin law.

We begin with the land. Wise bought it many years ago, using borrowed money to buy two of the four parcels. Telemark built "Historyland" on the four parcels but never leased the parcels from Wise or paid rent for their use. Telemark, not Wise, repaid the loans that he had taken out to buy two of the parcels, and also paid the real estate taxes on all four parcels. The interest on the loans was deducted on Telemark's, not the Wises', income tax returns. Wise has never listed the land on his personal financial statements. Together with some other land, the four parcels are listed

as an asset of Historyland, Inc., one of the Telemark corporations, on Telemark's consolidated disclosure statement which Wise filed with the bankruptcy judge. The statement lists the appraised value of the land as $1 million and its net realizable value as $600,000, more than half of which is due to the four parcels in question. Since the four parcels are encumbered by an $8 million mortgage signed by both Telemark and Wise, the trustee as representative of the unsecured creditors might appear to have nothing to gain from adding the land to the bankrupt estate. But the mortgagee is willing to discharge the mortgage for $350,000, and both the trustee and the Wises think the land is worth more.

The parcels were formally in Wise's name, and prima facie therefore could not be reached by creditors of his corporations. The principle of limited liability, whereby a corporation's creditors cannot reach the personal assets of the shareholders (the shareholders' liability is limited to their investment in the corporation), is important to our capitalist system. It enables people to invest in business without hazarding their entire wealth on the venture. *Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 770 F.2d 98, 103 (7th Cir.1985). If it were not for limited liability, an investor who was risk averse would not invest equity capital in an enterprise that had debt, since if the enterprise failed its debts might exceed its assets; or would negotiate a waiver of personal liability with the lenders; or would charge a higher risk premium. He might insist that the enterprise buy insurance unlimited in amount (if this were possible) against any possible involuntary debt such as a large tort judgment. He might steer clear of equity investing altogether. We do not want to exaggerate the importance of limited liability; often the shareholders of closely held corporations such as Telemark will guarantee loans to the corporation in order to reduce the corporation's interest expense. Nevertheless, equity investments would be discouraged to some extent if shareholders could not limit their liability to their investment.

But like almost all legal principles, the principle of limited liability has exceptions. Creditors are sometimes allowed to "pierce the corporate veil" and reach the (ostensibly) personal assets of the shareholders; that is what the trustee, representing the unsecured creditors of Telemark, did to the Wises here. The rules under which the corporate veil may be pierced go by many names, none very informative, such as alter ego and equitable estoppel. See Henn, Handbook of the Law of Corporations 250 n. 2 (2d ed. 1970). Wisconsin courts have eschewed legalisms and allowed the corporate veil to be pierced, and the shareholder held personally liable, whenever limited liability would "defeat some strong equitable claim." E.g., *Ruppa v. American States Ins. Co.*, 91 Wis.2d 628, 644, 284 N.W.2d 318, 324 (1979); *Sprecher v. Weston's Bar, Inc.*, 78 Wis.2d 26, 37–38, 253 N.W.2d 493, 498 (1977). This is becoming a standard approach. See, e.g., Meiners, Mofsky & Tollison, *Piercing the Veil of Limited Liability*, 4 Del. J. Corp. L. 351, 354 (1979).

A common situation in which limited liability is disregarded is where the shareholder has misrepresented his personal assets as corporate assets in order to get some advantage with creditors. Suppose a controlling shareholder such as Wise persuades a lender to extend credit on favorable terms to the shareholder's corporation by representing that the corporation has substantial net assets, but in fact it is a shell, and all the assets ostensibly owned by the corporation are actually owned by the shareholder. The corporation defaults, and when the lender tries to sue the shareholder to collect his loan—for the corporation has no assets out of which to collect it—he is met by the defense of limited liability. This is the paradigmatic case for rejecting the defense. Illustrative cases under Wisconsin law are *Wiebke v. Richardson & Sons, Inc.*, 83 Wis.2d 359, 362–64, 265 N.W.2d 571, 573 (1978), and *Quad/Graphics, Inc. v. Fass*, 548 F.Supp. 966, 969 (E.D.Wis.1982), aff'd on other grounds, 724 F.2d 1230 (7th Cir.1983).

The present case is harder. The land was registered in Wise's name, so any creditor who bothered to search the title of the land underlying "Historyland" would have reason to doubt that Telemark owned it, and would therefore know that he could not look confidently to the land as a source of repayment of his loan should Telemark default. The fact that Historyland had been erected on the land would not create an overriding representation that Telemark owned it; land beneath business premises is often owned by someone other than the owner of the premises, and merely leased to him. Granted, a leasehold may have considerable value, but then again it may not, especially if the lease is about to expire; certainly a creditor could not, without inquiry, assume that the lease had a long time to run or that the rental was below current market rates.

■ What alters the case is the fact that Telemark's disclosure statement, which Wise filed during the bankruptcy proceeding, lists the land as a corporate asset. Unsecured creditors extended credit to Telemark after this statement was filed. They would have had no occasion to doubt the truth of the representation and conduct a search (at some cost) of the land title registry. They could have pierced the veil under a misrepresentation rationale, and the trustee stands in their shoes. It is not a good objection that anyone who lends money to a known bankrupt is reckless and should not be protected against the bankrupt's misrepresentations. Persons who extend credit to a firm after the firm has declared bankruptcy are given priority over most other unsecured creditors precisely in order to induce prudent lenders to extend credit that may be vital to an orderly liquidation or reorganization. Telemark remained in operation after the bankruptcy, and needed credit to operate. The people who lent it money during this critical period should not be penalized by being stripped of the rights that the creditors of solvent firms enjoy as a matter of course.

It is true that In re Palmer Trading, Inc., 695 F.2d 1012, 1014 (7th Cir.1982),

holds that creditors who want to pierce the corporate veil must show not only a "fraud or wrong" but also "unjust loss or injury"; read together these requirements might seem to necessitate a showing that particular creditors advanced money in actual reliance on misrepresentations about the debtor's assets, and no effort to show this was made here. But to read Palmer so broadly would be to commit the cardinal sin of legal reasoning, which is to take judicial language out of its original context and apply it uncritically in a materially different context. "Palmer Trading was [not] rendered a mere asset-shorn shell maintained to lull creditors into believing that requisite security existed to cover their claims," id. at 1016; its lack of assets stemmed entirely from an embezzlement, see id. at 1019. It is as if the trustee in this case were trying to reach the Wises' personal assets because some employee of Telemark had stolen assets of Telemark. In Palmer the trustee's effort to use an unrelated wrong (the embezzlement) to satisfy the test for piercing the corporate veil was properly rebuffed; here the wrong consists of a deceptive disclosure statement, in which Wise represented his personal assets to be corporate assets in order to induce the extension of additional credit to the corporation.

Whatever resonance the words used in Palmer might seem to have beyond the factual circumstances of that case can be of little help to the Wises, and this for two reasons. First, although the opinion in Palmer does not indicate what state's law the court was applying, it must have been Illinois law; both the bankrupt corporation and its parent, whose assets the trustee was trying to reach, were Illinois corporations. No Wisconsin cases were cited. Second, in Van Dorn Co. v. Future Chemical & Oil Corp., 753 F.2d 565, 570–71 (7th Cir.1985), we criticized the reasoning in Palmer and confined the case to its facts.

We doubt that the trustee must prove that particular creditors actually relied on the representations made in the disclosure statement, though, for reasons to appear

shortly, we need not decide this issue definitively. Reliance would be difficult to prove, and one who has deliberately represented his property to be his corporation's, with the apparent purpose of inducing the extension of additional credit to the corporation, ought not be allowed to put the creditors to such proof. After all, the Wises are not being sued for deceit or misrepresentation; they just are being forbidden to invoke limited liability as a bar to the claims of the creditors of their wholly owned corporations.

Although the trustee thus has a strong case for piercing the corporate veil on a rationale of misrepresentation, this would not carry the day for him completely, because there is no evidence of how much credit the unsecured creditors advanced after the filing of the disclosure statement. If it was less than the value of the four parcels, allowing the trustee to claim that entire value as an asset of the bankrupt estate would confer a windfall on the unsecured creditors. Misrepresentation, however, was only one of the rationales that the bankruptcy judge used to pierce the corporate veil; the other was simply that the Wises did not own the parcels in question, notwithstanding their paper titles. The fact that title is in A's name does not prove that he owns it. He may be a trustee, or he may have given the land to B without bothering to alter the paper titles; in either case B would have equitable ownership, which is all that section 541 of the Bankruptcy Code requires. There is much evidence to support the inference that Telemark was the real owner of the four parcels. It paid indirectly for two of them, paid all expenses on all four, and treated all four as just another corporate asset. In this analysis the disclosure statement takes on a different significance: not as a representation about the ownership of the land but as one piece of evidence that Wise himself considered the land an asset of Telemark rather than a personal asset. The fact that Wise paid for two of the parcels with "his own" money has no significance; since he treated Telemark's assets as his own, the money may well have

been Telemark's. In short, by holding out the land as property of Telemark, Wise made it Telemark's property so far as Telemark's creditors were concerned. *Bank of Mauston v. Marachowsky*, 258 Wis. 599, 46 N.W.2d 863 (1951); cf. Baird & Jackson, *Possession and Ownership: An Examination of the Scope of Article 9*, 35 Stan.L. Rev. 175, 180–81 (1983).

■ Let us turn our attention now to the personal property that the trustee claims. We distinguish between the utilitarian items—the chairs and ladders and so forth—and the decorative items, primarily some Indian artifacts. Many of the utilitarian items were paid for by Telemark. Some were bought with checks drawn on Wise's personal bank account, but there are no records indicating which items were his property and which the corporation's; since he treated corporate assets and his own interchangeably, the fact that some items were paid for by personal check does not show that they really belonged to him rather than the corporation. All were items designed for commercial rather than personal use. The bankruptcy judge and the district judge were entitled to find (even more clearly than in the case of the four parcels of land) that they were the property of Telemark and not of Wise. Although it thus is not necessary to consider misrepresentation, we add that creditors would have assumed that the owner of the resort—Telemark—owned these items; and Telemark's disclosure statement lists as corporate assets miscellaneous unspecified equipment.

■ The decorative items are different. If a person buys a work of art with his own money and places it in his office, there is no presumption that the business owns it; nor is a creditor likely to extend credit in reliance on the business's owning it, for businesses commonly rent works of art or display works loaned to it by its officers. Of course Telemark may be the real owner of these artifacts even if they were paid for out of Wise's "personal" funds, for as we have said no distinction was maintained between personal and corporate assets. But the evidence of this is much weaker

than in the case of the land and the utilitarian items of personal property. Wise is entitled to present evidence that (1) decorative items (2) paid for by personal check were in fact his and not Telemark's. There is no question of reliance by creditors on Telemark's owning these items; the items were never listed in any financial disclosure statement and a creditor would not think that they were necessarily Telemark's property.

The other issues do not require discussion. The district court's judgment is affirmed except with respect to the decorative items of personal property, as to which the case is remanded to the district court with directions to remand the case to the bankruptcy judge for a further hearing on who owns them.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.