859 F.2d 664
 19 Collier Bankr.Cas.2d 922, 18 Bankr.Ct.Dec. 832,
Bankr. L. Rep. P 72,463
 Ardelle WILLIAMS, as trustee of the estate of Chacklan
Enterprises, Inc., Bankruptcy Case No. 84-050450M7
on behalf of certain investors, Plaintiff-Appellee,
v.
CALIFORNIA 1ST BANK, a federal bank, Defendant-Appellant.
 No. 87-6430.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1988.
Decided Oct. 6, 1988.
 
 Matthew V. Herron, Meisenheimer and Herron, San Diego, Cal., for plaintiff-appellee.
 Arnold Quittner, Herbert Katz, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for defendant-appellant.
 Appeal from the United States District Court for the Southern District of California.
 Before GOODWIN, FLETCHER and FARRIS, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 This is an interlocutory appeal from two orders, one denying a motion to dismiss, the other denying summary judgment. Appellee Ardelle Williams, a trustee in bankruptcy (Trustee), filed an action for violation of the federal securities laws against California First Bank (CFB or Bank) on behalf of the bankrupt's estate. Appellant CFB filed two motions in response: (1) a motion to dismiss on the ground that the Trustee has no standing; (2) a motion for summary judgment confirming the Bank's right to assert in pari delicto defenses against the Trustee. CFB appeals the denial of both its motions. We reverse the denial of the motion to dismiss.
 
 FACTS
 
 2
 Prior to its bankruptcy, Chacklan Enterprises, Inc. (the debtor) distributed Mexican seafood in the United States. To finance its business, the debtor offered for sale "investment contracts" and notes guaranteeing a monthly return of ten percent. The Bank acted as the debtor's depository for part of this time. In late 1984, the investment program collapsed and an involuntary bankruptcy petition was filed. Appellee Williams was appointed trustee under chapter 7.
 
 
 3
 The Trustee submitted an ex parte application to the bankruptcy court, seeking authority to solicit and accept from investors assignments of their claims against CFB. The bankruptcy court granted the application. The Trustee then sent a letter to the investors in which she identified herself, discussed possible claims against CFB and the advantages of letting the estate bring the claims, and set forth the terms of assignment:
 
 
 4
 If any money is recovered from this action, the funds will first be used to pay approved fees and expenses and other priority claims. After these claims are paid in full, I will request the Bankruptcy Court to disburse the balance of the funds to the investors providing the Assignment according to the size of their respective investments. Further, I will request that the investors who did not assign their claims not participate in this separate distribution.
 
 
 5
 In response to the letter, 111 investors assigned their claims to the Trustee.
 
 
 6
 The Trustee filed suit against CFB on behalf of the estate and the investors, alleging state and federal securities law violations arising from the Bank's participation in, knowledge of, or approval of the debtor's "Ponzi" scheme. The Bank moved to dismiss on the ground that the Trustee had no standing to bring the claims of the investors. The district court denied the motion, concluding that the Trustee may bring claims of third party creditors where there was an actual assignment approved by the bankruptcy court, pursuant to the Trustee's "power under 11 U.S.C. Sec. 541."
 
 
 7
 In its answer to the complaint, the Bank raised several affirmative defenses based on the debtor's pre-petition misconduct. In particular, the Bank contends that the Trustee is subject to the same in pari delicto defenses that would be available against the debtor, since any liability of CFB arose out of the debtor's allegedly fraudulent scheme. The Trustee filed a motion to strike under Rule 12(f), asserting that the Bank could not raise in pari delicto defenses in this case. The court granted the motion, giving CFB leave to amend the setoff defense as a counterclaim. The Bank then filed its amended answer, and the parties filed cross-motions for partial summary judgment on the availability of the in pari delicto defenses. The district court granted the Trustee's motion, ruling that CFB could not use "any pre-bankruptcy acts or omissions of Chacklan Enterprises, Inc. as the basis for a defense, offset or counterclaim to the assigned investor claims." In the same order, the district court certified for immediate appeal both the summary judgment and the order denying CFB's motion to dismiss. This court granted CFB permission to file an interlocutory appeal, which it timely did.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 8
 We assert jurisdiction over this appeal pursuant to 28 U.S.C. Secs. 1292(a)(1) and 1294(1). The district court's holdings as to the Trustee's standing and the Bank's permissible defenses are conclusions of law, which we review de novo. In re Dominelli, 788 F.2d 584, 585 (9th Cir.1986).
 
 DISCUSSION
 
 9
 The Bank argues that a trustee lacks standing to sue a third party on behalf of creditors of the estate. It relies primarily on Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), in which the Court concluded that a reorganization trustee under Chapter X had no standing under the old Bankruptcy Act to assert, on behalf of the holders of the debtor's debentures, claims of misconduct against a third party, in that case the trustee for the debenture holders under the indenture agreement. See also Rochelle v. Marine Midland Grace Trust Co., 535 F.2d 523, 527 (9th Cir.1976) (reorganization trustee lacks standing to maintain action on behalf of person or entity other than debtor corporation).
 
 
 10
 The Court identified three factors militating against finding standing. First, nowhere in the statute did the Court find any provision enabling the trustee "to collect money not owed to the estate." Caplin, 406 U.S. at 428, 92 S.Ct. at 1685. Second, the Court noted that the debtor had no claim against the indenture trustee. At the most, then, the trustee's claims described a situation where the debtor and the indenture trustee were in pari delicto. Id. at 429-30, 92 S.Ct. at 1685-86. Since it appeared that the indenture trustee would be entitled to be subrogated to the position of the debenture holders against the debtor, the Court saw no advantage to giving the trustee standing to sue. Id. at 430, 92 S.Ct. at 1686. The third problem troubling the Court was the possibility that the trustee's suit on behalf of debenture holders could be "inconsistent with any independent actions that they might bring themselves." Id. at 431-32, 92 S.Ct. at 1687. The Court saw no reason to believe "that by giving petitioner standing to sue on behalf of the debenture holders we would reduce litigation." Id. at 434, 92 S.Ct. at 1688. The Court accordingly affirmed the appellate court's conclusion that the trustee lacked standing, noting that such a grant of standing was a decision "that only Congress can make." Id. at 435, 92 S.Ct. at 1688.
 
 
 11
 When Congress rewrote the bankruptcy laws in 1978, it considered and rejected a provision which would have expressly overruled Caplin. See In re Ozark Restaurant Equip. Co., 816 F.2d 1222, 1227 & n. 9 (8th Cir.1987). It has since been held that Caplin remains the law under the revised bankruptcy code. Ozark Equip. Co., 816 F.2d at 1228; Koch Refining v. Farmers Union Central Exchange, 831 F.2d 1339, 1347-48 n. 11 (7th Cir.1987).
 
 
 12
 The Bank contends that Caplin and its progeny control this case. We agree. Although we are mindful that, unlike Caplin, the creditors here assigned their claims to the Trustee, we do not think the mere fact of assignment in order to allow the Trustee to pursue the claims for the creditors sufficiently distinguishes this case to allow of a different result. Evaluating the Trustee's claim in light of the three concerns that informed the Court's holding in Caplin reveals that substantially the same problems exist.
 
 
 13
 First, the assignments notwithstanding, the investors plainly remain the real parties in interest in these actions. The Trustee and the estate will recoup only administrative costs from a favorable judgment; the investor-assignors receive the bulk of any recovery. In reality, then, the creditors have assigned their claims only for purposes of bringing suit. As a result, the Trustee, as in Caplin, is attempting to "collect money not owed to the estate." The fact that a Chapter 7 is involved rather than a reorganization does not suggest a different result:
 
 
 14
 [J]ust as there was nothing in the statutory reorganization scheme of the old Bankruptcy Act authorizing the trustee to collect money not owed to the estate, similarly, there is nothing in ... the liquidation framework of the Code authorizing a Chapter 7 trustee to collect money not owed to the estate.
 
 
 15
 Ozark Equip. Co., 816 F.2d at 1228 (citations omitted).
 
 
 16
 Second, Chacklan Enterprises, like the bankrupt corporation in Caplin, has no claim of its own that it could press against the defendant. Indeed, since CFB and Chacklan may well stand in pari delicto, the bank likely will be able to subrogate itself to the investors' position to pursue their claims against the debtor's estate to recoup any judgments rendered in this action. While it is true that, standing in the creditors' shoes, the Trustee would not be vulnerable to CFB's defenses against the debtor, she could eventually be forced to recognize CFB's claims against the estate as subrogee of the investors in her capacity as representative of the debtor. Since the investors' total judgments will not be affected by the ultimate division of liability between the estate and CFB, it is as difficult here as it was in Caplin to see "what advantage there is in giving [the trustee] standing to sue[.]" Caplin, 406 U.S. at 430, 92 S.Ct. at 1686.
 
 
 17
 Finally, although those investors who assigned their claims are precluded from bringing individual suits, there remains the potential for inconsistent actions by those who did not assign. The failure of the Trustee to obtain assignments from all the investors bears out the Caplin Court's fear that "it is extremely doubtful that the trustee and all [creditors] would agree on the amount of damages to seek, or even on the theory on which to sue." Id. at 432, 92 S.Ct. at 1687. Inconsistent actions increase the chance that the Trustee will find her interests diverging from those of the investors on whose behalf she is suing. See id. at 432 n. 21, 92 S.Ct. at 1687 n. 21. Furthermore, we are unsatisfied, as was the Court in Caplin, "that by giving [the trustee] standing to sue ... we would reduce litigation." Id. at 434, 92 S.Ct. at 1688.
 
 
 18
 We agree with the Eighth Circuit that Congress' express decision not to overrule Caplin is "extremely noteworthy." Ozark Equip. Co., 816 F.2d at 1228. We also share that court's certitude that "Congress' message is clear-- no trustee, whether a reorganization trustee as in Caplin or a liquidation trustee[,] has power under ... the Code to assert general causes of action, such as [an] alter ego claim, on behalf of the bankrupt estate's creditors." Id. (Emphasis added.)
 
 
 19
 Assignment of creditors' claims for the purpose of collection for the benefit of creditors does not distinguish this case from Caplin. The Trustee lacked authority to bring suit on the claims. The case should have been dismissed.
 
 
 20
 REVERSED AND REMANDED.