## In re SOUTHWEST EQUIPMENT RENTAL, INC. d/b/a Southwest Motor Freight, Debtor.

## C. Kenneth STILL, Trustee of Southwest Equipment Rental, Inc. d/b/a Southwest Motor Freight, Plaintiff,

v.

## CONGRESS FINANCIAL CORPORATION (SOUTHERN), Defendant.

Bankruptcy No. 1–88–00033.
Adv. No. 1–88–0030.
No. CIV–1–88–109.

United States District Court,
E.D. Tennessee, S.D.

May 4, 1989.

Gary R. Patrick, Chattanooga, Tenn., for plaintiff.

Kyle R. Weems, Chattanooga, Tenn., C. Edward Dobbs, Atlanta, Ga., for defendant.

## MEMORANDUM

EDGAR, District Judge.

The defendant, Congress Financial Corporation (hereinafter "Congress"), seeks the dismissal of the trustee's action for injunctive relief and the recovery of unpaid wages allegedly due and owing to employees of the debtor, Southwest Equipment Rental, Inc., doing business as Southwest Motor Freight (hereinafter "Southwest"). The trustee filed this action seeking a remedy pursuant to the Fair Labor Standards Act minimum wage and overtime pay provisions, 29 U.S.C. §§ 201 *et seq.* (1938), alleging that Congress is liable under the "hot goods" provision of 29 U.S.C. § 215(a)(1) for the amount of unpaid wages owed to Southwest drivers and employees. Congress has filed the instant motion to dismiss this suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting alternatively that the complaint fails to state a claim for relief, that the trustee lacks standing to bring this claim under the Act, and that the relief requested exceeds the trustee's authority as defined by the Bankruptcy Code.

### Standard of Review

A complaint challenged by a defendant's motion to dismiss is to be construed in the light most favorable to the plaintiff and its allegations taken as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). As noted in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the plaintiff's complaint should not be dismissed unless it appears beyond doubt that no set of facts may be proved in support of the plaintiff's claim entitling the plaintiff to the relief sought. *See also Jones v. Sherrill,* 827 F.2d 1102 (6th Cir. 1987); *Lee v. Western Reserve Psychiatric Hab. Center,* 747 F.2d 1062 (6th Cir.1984).

### Factual Background

This case was withdrawn from the bankruptcy court pursuant to 28 U.S.C. § 157(d), where it was originally filed as an adversary proceeding (No. 1–88–0030) in the converted Chapter 7 bankruptcy case of the debtor, Southwest. *See* Bankr. Case No. 1–88–00033. On January 8, 1988, Southwest filed a petition in the bankruptcy court seeking relief under Chapter 11 of the Bankruptcy Code. Southwest was, at the time, engaged in the commercial interstate transportation of freight, operating its national trucking company from offices near Chattanooga, Tennessee. The defendant Congress Financial acquired the assets of a commercial lender, James Talcott, Inc., in April of 1986. At that time, Talcott was engaged in a financing arrangement with Southwest whereby Talcott would lend or advance operating capital to Southwest in return for the pledging of Southwest's accounts receivable as security for the funds advanced. The trustee asserts that Southwest pledged its accounts, contract rights, chattel paper, general intangibles, inventory, equipment, fixtures and proceeds to Talcott to secure repayment of the funds advanced. The trustee acknowledges that Congress perfected its security

interest by filing a UCC–1 with the State of Tennessee.

The trustee asserts that this factoring arrangement between Southwest and Congress continued through 1987 and into the early months of 1988. During this period, the trustee asserts, Congress extended monies to Southwest in excess of the parties financing agreement such that the debtor's outstanding debt balance exceeded $9 million. At some point in the fall of 1987, Congress is asserted to have altered its lending practices as to Southwest, placing strict limits on the extension of further credit and maintaining its own representatives on the Southwest premises to control the debtor's financial operations and collec-. tions. The trustee asserts that during this period when Congress was closely involved in the debtor's financial operations, Southwest's outstanding debt to Congress was reduced by over one-half, so that by October of 1987, the amount Southwest owed Congress was down to $4.2 million.

As previously noted, the trustee's claim against Congress arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (hereinafter "FLSA"). The trustee asserts that during the period of Congress' close control over Southwest's financial operations, Southwest's drivers and employees were not paid their regular wages as required by federal law. Specifically, the trustee charges that Southwest employees were not paid for the pay periods December 18, 1987, through January 15, 1988, although Southwest continued to operate during this period of time and commercial freight was carried. The trustee charges that although Southwest drivers and employees were not paid during this period, Congress continued to control Southwest's finances through monitoring and collecting its accounts receivable with the result that Southwest's outstanding debt was substantially reduced through the collection of the debtor's accounts.

The trustee's complaint seeks an injunction prohibiting Congress from executing on its security interest by collecting further sums from Southwest's accounts receiva-

ble, until Congress turns over sufficient funds to the trustee to satisfy the employees' claims for unpaid wages. In the alternative, the trustee seeks direct payment to the employees of their unpaid wages. *See* Trustee's Complaint. The trustee argues that Congress has violated the FLSA by collecting the debtor's accounts and applying the amounts to pay down Southwest's debt without first satisfying the employees' claims for unpaid wages. The trustee argues that Congress has thereby violated the "hot goods" prohibition set out in 29 U.S.C. § 215(a)(1). The trustee relies primarily on the recent Supreme Court decision in *Citicorp Industrial Credit, Inc. v. Brock*, 483 U.S. 27, 107 S.Ct. 2694, 97 L.Ed.2d 23 (1987), which applied the provisions of the FLSA, namely the "hot goods" provision, to the secured creditor of a debtor in bankruptcy acquiring goods under a security agreement. The Court in *Citicorp* banned the sale of the goods in interstate commerce which were produced in violation of the minimum wage and overtime laws of the FLSA, 29 U.S.C. § 215(a)(1).

As the trustee's complaint establishes, Southwest filed its Chapter 11 reorganization petition on January 8, 1988. The bankruptcy court thereafter appointed C. Kenneth Still as the trustee for Southwest, in both the original Chapter 11 reorganization proceeding and subsequently when the case was converted to a Chapter 7 liquidation. The trustee originally filed this action as an adversary proceeding in the bankruptcy court. Subsequently, Congress filed a motion seeking the mandatory withdrawal of the trustee's complaint pursuant to 28 U.S.C. § 157(d), asserting that resolution of the claim requires interpretation and construction of section 15(a)(1) of the FLSA under the facts of this case.[1] The motion to withdraw was granted and thereafter, Congress filed the instant motion to dismiss. The trustee has responded in opposition and Congress has filed a reply.

*Issues Raised by the Motion to Dismiss*

Congress argues in support of its motion to dismiss that the "hot goods" prohibition

---

1. Section 15(a)(1) of the FLSA is codified at 29 U.S.C. § 215(a)(1).

of § 15(a)(1) of the FLSA cannot be applied to it as argued by the trustee because there are no "hot goods" implicated under these facts. Congress argues that there is no support in either the FLSA or the *Citicorp* decision for the trustee's claim that the accounts receivable generated by the deliveries of the drivers and work of other Southwest employees can be considered "goods" under the statute. Further, Congress argues that by collecting sums from the debtor's accounts receivable it does not thereby introduce "goods" into commerce in violation of § 15(a)(1) of the FLSA. Congress further argues that the trustee lacks standing to enforce the "hot goods" provision of the FLSA. Congress points out that the provision for injunctive relief provided by the FLSA to restrain violations of the "hot goods" section is found at 29 U.S.C. § 217. Congress relies upon the caselaw interpreting that provision which holds that "the Secretary of Labor is vested with exclusive authority for filing a suit under section 217 to restrain FLSA violations." *Marchak v. Observer Publications, Inc.*, 493 F.Supp. 278, 280 (D.R.I. 1980). *See also Wirtz v. Jones*, 340 F.2d 901, 903–05 (5th Cir.1965). Lastly, Congress raises the argument that the trustee's suit to recover unpaid wages on behalf of Southwest's employees violates the bankruptcy statute because it seeks recovery for a specific class of creditors, thereby favoring one class over the remainder. Congress asserts that this violates the trustee's fiduciary obligation to the creditors mandated by 11 U.S.C. § 323(a).

The Court will address these issues *seriatim.*

### The Fair Labor Standards Act—Statutory Scheme

Enacted in 1938, the FLSA mandates the payment of a minimum wage and maximum hours of work and regulates child labor for all employees within the scope of the statute. 29 U.S.C. §§ 206 and 207. As noted by the court in *Donovan v. TMC Indust.*, 20 B.R. 997, 25 WH Cases 829 (N.D.Ga.1982), the FLSA statutory scheme consists of the following provisions:

The principal features of the Act establish minimum wages (§ 206) and maximum hours (§ 207), and prohibit oppressive child labor (§ 212). The Act prohibits the shipment or sale of any goods in the production of which any employee was employed in violation of § 206 or § 207 (§ 215(a)(1)). This Section also prohibits the violation of the minimum wage and maximum hour provisions (§ 215(a)(2)). The enforcement scheme is found in § 216 and § 217 of the Act. First, there is criminal exposure for violating § 215 (§ 216(a)). Second, an action may be brought by individual employees to receive unpaid wages or overtime compensation (§ 216(b)), or by the Secretary on behalf of employees (§ 216(c)). An action brought under § 216(b) or (c) is a damage action. Third, the Secretary may bring an action for injunctive relief (§ 217). The Secretary may seek to enjoin any activity proscribed by § 215: that is, the sale or transport of goods manufactured by individuals who were not legally compensated (§ 215(a)(1)), or to restrain the withholding of unpaid wages or overtime compensation (§ 215(a)(2)).

*Donovan v. TMC Indust.*, 20 B.R. at 1000, 25 WH Cases at 831.

The complaint only alleges that Congress has violated the "hot goods" provision of 29 U.S.C. § 215(a). As pointed out in the above-cited case, and clear from the statutory scheme, the injunctive remedy provided to restrain violations of this provision as part of the enforcement scheme is found exclusively in § 217. This remedy is reserved exclusively for the Secretary of Labor or his designated representative. *See Barrentine v. Arkansas–Best Freight Sys. Inc.*, 750 F.2d 47, 51 (8th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985); *Morelock v. NCR Corp.*, 546 F.2d 682, 688 (6th Cir.1976), *vacated on other grounds*, 435 U.S. 911, 98 S.Ct. 1463, 55 L.Ed.2d 503 (1978); *Marchak*, 493 F.Supp. at 280.

This interpretation of the statutory enforcement scheme has resulted from the determination that injunctive relief is gen-

erally equitable in nature, and under the FLSA, intended to ensure compliance with the wage and hour standards created by the Act. It is not, however, a damages action, although the equitable remedy of restitution is also available to the Secretary pursuant to section 216(c). *See Hodgson v. Wheaton Glass Co.,* 446 F.2d 527, 532 (3d Cir.1971); *Usery v. Chef Italia,* 540 F.Supp. 587, 590 n. 8 (E.D.Pa.1982); *Dunlop v. Darboian Ent., Inc.,* 410 F.Supp. 479, 480–81 (E.D.Mich.1975). "An injunction under § 217 is 'not to collect a debt but rather to redress a wrong being done to the public good.'" *Donovan v. TMC Indust.,* 20 B.R. at 1000, 25 WH Cases at 831 (quoting *Wirtz v. Jones,* 340 F.2d 901, 903–04 (5th Cir.1965)). *See also Donovan v. University of Texas at El Paso,* 643 F.2d 1201, 1208 (5th Cir.1981).

It does not, therefore, appear that the trustee has standing to pursue injunctive relief against Congress in aid of its action to recover the unpaid wages at issue. The trustee's claim for injunctive relief from Congress' alleged violation of the "hot goods" provision of the FLSA, 29 U.S.C. § 215(a)(1) will be DISMISSED, pursuant to the defendant's motion and the authority cited above.

### Trustee's Standing Under the Bankruptcy Code

Congress next challenges the trustee's standing to assert the instant claim for recovery of the unpaid wages on behalf of Southwest drivers and employees pursuant to the "hot goods" provision of the FLSA. The Constitution, in Article III, requires that citizens who seek resolution of their disputes in the courts of the United States have "standing" to pursue their claim. The party bringing the claim must have standing to seek intervention of the courts. Standing, simply translated, requires a recognized "injury" to the party bringing the action. In *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court held that a party plaintiff must prove that he or she "personally has suffered some actual or threatened injury

as a result of the putatively illegal conduct of the defendant, [which] fairly can be traced to the challenged action...." *Id.* at 472, 102 S.Ct. at 758. Congress asserts that the trustee has suffered no injury that is recognized under the Bankruptcy Code or the FLSA.

A trustee appointed pursuant to 11 U.S.C. §§ 321 and 322 becomes the legal representative of the bankrupt estate, and thereby acquires the capacity to sue and/or be sued in furtherance of the trustee's broad responsibilities granted by the Bankruptcy Code for marshalling the debtor's assets and administering the affairs of the estate. *See* 11 U.S.C. § 323. *See also* 11 U.S.C. §§ 704, 721, 724–25, and §§ 363–65. 11 U.S.C. § 704(1) assigns the trustee in a Chapter 7 bankruptcy case the responsibility of collecting the estate's property, converting it to money and distributing it to the creditors according to statute. Section 541 defines "property of the estate" as "all legal or equitable interests *of the debtor* in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). Actions such as the instant one seeking recovery of a debt owed a specific class of creditors of the estate is not within the scope of section 541, where the statute contains "key limiting language ...—property of the estate comprises only 'legal and equitable interests *of the debtor.*'" *In re Ozark Restaurant Equip. Co., Inc.,* 816 F.2d 1222, 1224 (8th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). *See also Williams v. California 1st Bank,* 859 F.2d 664, 666 (9th Cir.1988); *In re R.H.N. Realty Corp.,* 84 B.R. 356, 360 (Bankr.S.D.N.Y.1988).

Under the FLSA, the recovery of unpaid wages is a remedy reserved for the employees of the debtor (29 U.S.C. § 216(b)). There is no authority supporting the claim that a section 216(b) claim can be considered a cause of action belonging to the debtor. The instant FLSA claim asserted by the trustee is, therefore, not within the definition of "property of the estate." *See In re Ozark Restaurant,* 816 F.2d at 1225; 4 *Collier on Bankruptcy* ¶ 541.10[1] (15th ed. 1986). Where the law recognizes a

cause of action personal to a creditor, rather than one general to the estate, such a claim is not an asset of the bankrupt estate under section 541(a)(1). *Id.; Koch Refining v. Farmers Union Central Exch., Inc.,* 831 F.2d 1339, 1348 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). "A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause." *Koch,* 831 F.2d at 1348. Here, the trustee seeks to recover on behalf of a specific class of creditors, a class consisting of those employees of Southwest who were not paid wages for two pay periods immediately prior to the filing of Southwest's bankruptcy petition. Numerous employees of Southwest have filed claims with the trustee seeking payment of their unpaid wages, and the trustee in turn filed this suit seeking a recovery of that sum from Congress. However, it is clear, despite the fact that the trustee filed this suit on behalf of the estate, that the real party in interest is the specific class of creditors consisting of the unpaid employees of the debtor. "[I]f there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue." *In re Western World Funding, Inc.,* 52 B.R. 743, 775 (Bankr.D.Nev.1985).

"A trustee may maintain only a general claim. His right to bring a claim 'depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to *specific* creditors.'" *Koch,* 831 F.2d at 1349 (quoting *Cissell v. American Home Assur. Co.,* 521 F.2d 790, 793 (6th Cir.1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976)). As further noted, the accrual of a cause of action to an individual creditor claimant is distinguishable from one accruing to the estate generally and depends upon the injury alleged and the relief sought. Where the injury and remedy are "peculiar and personal to the claimant," as here the class of unpaid employees, such claims are beyond the scope of the trustee's statutory authority. *Koch,* 831 F.2d at 1349. *See also Williams,* 859 F.2d at 667. This is because the trustee's

power under the Bankruptcy Act does not enable the trustee "to collect money not owed to the estate.... His task is simply to 'collect and reduce to money the property of the estates for which he is trustee." *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 428–29, 92 S.Ct. 1678, 1685, 32 L.Ed.2d 195 (1972).

In addition to the trustee's authority to marshal property of the estate pursuant to section 541, section 544 of the Bankruptcy Code, 11 U.S.C. § 544, gives the trustee the rights and powers of a hypothetical lien creditor to avoid certain property transfers of the debtor. As explained in the Notes of the Senate Judiciary Committee, Senate Report No. 95–989, U.S.Code Cong. & Admin. News 1978, p. 5787, section 544(a) is known as the "strong arm clause" and gives the bankruptcy trustee the rights of a judicial lien creditor as to certain property of the debtor as of the date of bankruptcy (§ 544(a)(1)). Subsection (a)(2) gives the trustee the rights of an unsatisfied creditor with a writ of execution against property of the debtor, and section 544(a)(3) treats the trustee as a bona fide purchaser of real property of the debtor. The standing necessary to pursue the remedy sought by the trustee under the FLSA does not fit within the rights and powers conferred upon him under sections 544(a)(1)—(3). *See In re Ozark Restaurant,* 816 F.2d at 1229–30 n. 12.

The Supreme Court has interpreted the analogous section of the old Bankruptcy Act relevant to the ability of the trustee to litigate claims against third parties on behalf of creditors of the estate. *See* 52 Stat. 883, 11 U.S.C. §§ 501 *et seq.* (1938). In *Caplin v. Marine Midland Grace Trust Co.,* the Court considered three relevant criteria believed to be determinative of "the nature of Chapter X ['business reorganizations'] proceedings, the role of the trustee in reorganization, and the way in which standing to sue on behalf of debenture holders [or creditors] would affect or change that role." 406 U.S. at 422, 92 S.Ct. at 1682. In rejecting the trustee's standing argument, the Court found first, that the statutory reorganization scheme

created by Congress did not explicitly authorize the trustee to "assume the responsibility of suing third parties on behalf of creditors,.... [or] to collect money not owed to the estate." *Id.* at 428, 92 S.Ct. at 1685. Next, the Court focused on whether the bankrupt estate itself could be legally subrogated to the claims of the creditors, but brought by the trustee in the name of the debtor. *Id.* at 429–30, 92 S.Ct. at 1685–86. Lastly, the Court considered the inconsistency in the positions of the creditors arising from any independent action they might later bring on the same legal theory, and the suit brought by the trustee on their behalf. *Id.* at 431–32, 92 S.Ct. at 1686–87.

Courts considering the viability of the *Caplin* analysis in light of the 1978 Bankruptcy Act have determined that *Caplin* provides the proper analytical framework for defining the scope of the trustee's standing to sue third parties on behalf of creditors. *See Williams,* 859 F.2d at 666–67; *Koch,* 831 F.2d at 1347 n. 11; *In re Ozark Restaurant,* 816 F.2d at 1227–30. As noted by one court, "[a]lthough section 544 clarified and expanded the trustee's role with respect to creditors, in no way was it changed to authorize the trustee to bring suits on behalf of the estate's creditors against third parties. In fact, the legislative history suggests just the opposite." *In re Ozark Restaurant,* 816 F.2d at 1222. This is because the final version of section 544 enacted by Congress in the 1978 Act did not contain the proposed subsection (c) which would have statutorily overruled *Caplin,* thereby allowing the trustee to enforce claims of individual creditors or a class of creditors with similar claims against a third party.

As noted by the court in *Koch,* this means that *Caplin* remains good law; that there is no express statutory authority providing the trustee with the right to file creditors' claims against third parties; and, the trustee's power to bring general claims on behalf of all creditors remains intact.

831 F.2d at 1347–48 n. 11. *See also Williams,* 859 F.2d at 667; *In re Ozark Restaurant,* 816 F.2d at 1227–28. The issue raised by a third party's challenge to the trustee's standing to bring such damage claims arises most often in the context of corporate mismanagement and breach of duty claims filed by the trustee on behalf of the bankrupt entity. These are based on the theory that where such claims may be filed to recover from corporate officers and directors on behalf of the corporation itself, the suit is the property of the bankrupt corporation under section 541. *See, e.g., Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Steyr–Daimler–Puch of Am. Corp. v. Pappas,* 852 F.2d 132 (4th Cir.1988); *Koch,* 831 F.2d 1339; *In re S.I. Acquisition, Inc.,* 817 F.2d 1142 (5th Cir.1987); *In re Ozark Restaurant,* 816 F.2d 1222; *In re Kaiser,* 791 F.2d 73, 76 (7th Cir.), *cert. denied,* 479 U.S. 1011, 107 S.Ct. 655, 93 L.Ed.2d 710 (1986); *ANR Ltd., Inc. v. Chattin,* 89 B.R. 898 (D.Utah 1988).

The reasoning of those courts that have determined that the trustee has standing to assert "alter ego" claims on behalf of a class of creditors depends upon an interpretation of state law and the determination that such a claim becomes "property of the estate" under section 541.[2] The trustee's claim in this case depends upon federal statutory law embodied in the FLSA. Under the FLSA, the employees have a "personal" cause of action to collect past due wages provided in 29 U.S.C. § 216(b). This right of action does not and cannot enure to the benefit of the debtor under any circumstances because it is the debtor, Southwest, that is directly liable as the employer for the payment of the wages sought. Under these facts, the unpaid employees remain the real parties in interest, not the debtor. This is money owed to the employees individually, not to the estate generally, despite the fact that these unpaid employees are a substantial class of creditors with claims pending against the estate.

**2.** Recently, the Fifth Circuit in *In re S.I. Acquisitions, Inc.* held that a creditor's alter ego claim under state law is a right of action that belongs to the debtor and is therefore property of the

estate under section 541. *See* 817 F.2d 1142. *See also Koch,* 831 F.2d at 1346; *In re Kaiser,* 791 F.2d at 76; *In re Western World Funding, Inc.,* 52 B.R. at 775 (Bankr.D.Nev.1985).

## Conclusion

This Court agrees with the reasoning and decisions of those courts which have determined that Congress intended to limit the trustee's authority to pursue damage claims of creditors against third party defendants. *See Williams,* 859 F.2d at 667; *Koch,* 831 F.2d at 1348; *In re Ozark Restaurant,* 816 F.2d at 1229–30; *In re R.H.N. Realty Corp.,* 84 B.R. at 360; *Wayne Film Sys. Corp. v. Film Recovery Sys. Corp.,* 64 B.R. 45 (N.D.Ill.1986). *See also Brown v. Vencap Invest. Corp. and Morton Kent,* Docket No. 556 (Hamilton Law) (Tenn.App. Mar. 31, 1984), *noted in Koch,* 831 F.2d at 1347–48.

Because the remedy sought is specifically limited by the FLSA as a personal right of action for the benefit of the unpaid employees, the claim is not one that can be said to be property of the bankrupt estate, and it is beyond the reach of the trustee's powers under section 541 to collect and reduce to money the legal and equitable interests of the debtor. Nor does such a claim fall within the scope of the trustee's powers pursuant to sections 544(a) or (b) as a hypothetical lien creditor. Under the *Caplin* analysis, the amount sought by the trustee is not "owed to the estate," nor is it a claim to which the trustee may be subrogated through rights of the debtor. Lastly, the statutory distribution of any recovery by the trustee on this claim would likely be inconsistent with the claims of the specific class of creditors for whose benefit the claim was filed. *See Moore v. Bay,* 284 U.S. 4, 5, 52 S.Ct. 3, 4, 76 L.Ed. 133 (1931) ("the Bankruptcy Act appears to us to imply very plainly, that what thus is recovered for the benefit of the estate is to be distributed in dividends of an equal percentum on all allowed claims, except such as have priority or are secured.")

For the reasons above-stated, the Court finds that the trustee does not have standing under the Bankruptcy Act to assert a claim for the recovery of unpaid wages on behalf of employees of the debtor, a specific class of creditors of the estate, pursuant to the provisions of the FLSA. As a result, it is unnecessary for the Court to consider the trustee's unique and thoughtful argument that the accounts receivable generated by the employees of Southwest during the period of time they were not paid their wages in violation of the FLSA constitute "hot goods" under 29 U.S.C. § 215(a)(1). The motion to dismiss filed by the defendant, Congress Financial Corporation, will be GRANTED.