**In re DAVEY ROOFING, INC., a California corporation, Debtor.**

**Bankruptcy No. SA 93–18783–JW.**

United States Bankruptcy Court, C.D. California.

May 3, 1994.

Jeremy V. Richards, Debra V. Geist, Pachulski, Stang, Ziehl & Young, P.C., Los Angeles, CA, for debtor.

Todd C. Ringstad, Lobel, Winthrop & Broker, Irvine, CA, for Timothy Davey.

Raymond A. Myer, Myer, Paynter & Fock, Santa Barbara, CA, for creditor SG Wholesale.

Richard A. Marshack, Thomas J. Polis, Marshack & Goe, Santa Ana, CA, for Official Committee of Unsecured Creditors.

Arthur Marquis, Santa Ana, CA, Asst. U.S. trustee.

## MEMORANDUM OF OPINION

JOHN J. WILSON, Bankruptcy Judge.

### I. INTRODUCTION

The issue before this Court, on motion by debtor in possession Davey Roofing, Inc. ("Debtor"), is whether alter ego claims against Donald Davey ("Debtor's principal") constitute property of the bankruptcy estate. In bankruptcy, property of the estate does not belong to any individual creditor. If under Ninth Circuit and California law, Debtor could assert an alter ego claim to pierce its own corporate veil, then that claim would constitute property of the estate, and could be asserted only by Debtor.

Creditor S–G Wholesale Roofing ("SG") and the Official Committee of Unsecured Creditors ("Committee") contend that the Ninth Circuit's holding in *Williams v. California First Bank* is controlling, that Debtor lacks the power to assert general causes of action, such as alter ego claims, and that alter ego claims can be pursued by individual creditors. In contrast, Debtor contends that *Williams* does not preclude Debtor from asserting an alter ego claim, that California law permits a corporation to pierce its own corporate veil, and therefore that alter ego claims vest exclusively with the bankruptcy estate. Rejecting the opposition's contention that *Williams* controls, this Court holds that alter ego claims are property of the Bankruptcy estate within the scope of Bankruptcy Code Section 541(a), 11 U.S.C. Section 541 (1988).

## II. FACTUAL BACKGROUND

In March of 1989, S–G Wholesale filed an action in the California Superior Court, County of Orange, seeking to recover from Debtor's principal on an alter ego theory approximately $134,000 allegedly owed to SG by Debtor. SG alleged (1) Debtor's principal commingled Debtor's assets with his own and withdrew funds for personal use, and (2) Debtor was undercapitalized and was "unable to respond in damages for the transfer of assets to ... [Debtor's principal]."

On August 10, 1993, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. Debtor has filed a plan of reorganization, in which Donald Davey, Debtor's principal, will grant to reorganized Debtor a second priority deed of trust encumbering his residence to secure Debtor's obligations, and has pledged to make a capital contribution to assure the Plan's success. Davey has also provided financial statements, on a confidential basis, which assert that the capital contribution and residence constitute Davey's only substantial assets. In return for encumbering his residence and making the capital contribution, the Plan calls for Debtor to enter into a general release in favor of Davey.

In response, the Committee has filed its objections to the Debtor's Disclosure Statement, requesting that the Statement disclose that there is uncertainty, under applicable law, whether the alter ego claims of individual creditors against Davey will survive confirmation of the Plan. So that the Plan can proceed toward confirmation, Debtor now moves the Court to determine whether alter ego claims against Donald Davey are property of the bankruptcy estate.

## III. DISCUSSION

■ The Bankruptcy Code vests a debtor with the right to assert all of its legal and equitable interests. Under § 1107, the debtor is vested with the rights, powers, and duties of a trustee, 11 U.S.C. § 704(1), including the duty to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1). Under § 541, the property of the estate includes all legal and equitable interests of the debtor at the commencement of the case. So the question whether alter ego claims belong to the bankruptcy estate or to its creditors, for the purpose of deciding who has standing to assert such claims, depends on whether state law permits a corporation to pierce its own corporate veil. *Kalb, Voorhis & Co. v. American Financial Corporation,* 8 F.3d 130 (2nd Cir. 1993). If Ninth Circuit and California law permit a debtor to assert an alter ego claim to pierce its own corporate veil, that claim becomes property of the estate; and if alter ego claims constitute property of the bankruptcy estate, then they cannot belong to any individual creditor, and thus may not be asserted by individual creditors.

### A. Under Ninth Circuit Law, a Chapter 11 Debtor has Standing to Bring Veil-Piercing Claims.

■ In arguing that Debtor's individual creditors may assert alter ego claims, SG and the Committee rely on the Ninth Circuit case *Williams v. California 1st Bank,* 859 F.2d 664 (9th Cir.1988), which is often cited for the proposition that alter ego claims do not vest in the bankruptcy estate. On the other hand, in arguing that SG and Debtor's other creditors are barred from asserting alter ego claims against Debtor's principal, Debtor relies on *Kalb, Voorhis & Co.,* 8 F.3d 130 (2nd Cir.1993), which analyzes *Williams* and holds that Ninth Circuit law does not prevent a bankruptcy estate from asserting an alter ego claim where such a claim belongs to the corporation under state law. This Court follows the Second Circuit's reasoning in *Kalb,* and finds that *Williams* does not control the case at bar.

SG's and the Committee's oppositions focus on one sentence in *Williams,* in which the court quoted *Ozark Equip. Co.:*

> " ... *no* trustee ... has power under ... the Code to assert general causes of action, such as [an] alter ego claim, on behalf of the bankrupt estate's creditors."

859 F.2d 664, 667 (9th Cir.1988) (quoting *In re Ozark Restaurant Equip. Co.,* 816 F.2d 1222, 1228 (8th Cir.1987), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102.

In *Williams,* investors asserted securities fraud claims against a bank that allegedly participated in the debtor corporations's "Ponzi scheme." Once the debtor corporation went into bankruptcy, the Chapter 7 trustee solicited assignments of claims against the bank from among the debtor's allegedly defrauded investors. The trustee was to sue the bank on behalf of the investors, and then distribute the net proceeds to those investors who had assigned their claims to the trustee. In *Williams,* the trustee was not suing on behalf of the bankrupt estate, but rather on behalf on certain investors, and the trustee did not plan to distribute the proceeds to non-assigning investors, or to any other creditors of the estate. If the trustee had argued that the claims belonged to the bankruptcy estate, then the usual rules and priorities for distribution of property in bankruptcy would have applied. Inasmuch as *Williams* did not involve alter ego claims, it is inapposite on its facts, and the opposition's reliance on *Williams* is misplaced.

In holding that *Williams* does not control, this Court relies on the Second Circuit's analysis of *Williams* found in *Kalb.* In *Kalb,* as in the case at bar, a creditor filed an action to pierce the veil of the corporate debtor. Although the debtor had filed under Chapter 11 in the District of Arizona, the creditor asserted an alter ego claim in a suit filed in the Southern District of New York, attempting to impose liability on the debtor's former controlling stockholder for debentures issued by the debtor. The district court dismissed the creditor's suit on the ground that under governing state law, the debtor had exclusive standing to assert alter ego claims. On appeal, the creditor argued that under the Ninth Circuit law governing the debtor's bankruptcy in Arizona, neither the trustee nor the debtor-in-possession had standing to assert veil-piercing claims; therefore, if the debtor could not bring the alter ego claims in Arizona, and if the creditor could not bring the alter ego claims in New York, such claims could not be brought anywhere by anyone. In affirming the judgment of the district court, however, the Second Circuit held that *Williams* does not prevent a debtor from asserting alter ego claims. Given that

*Williams* is not an alter ego case, the language cited for the proposition that a debtor cannot assert an alter ego claim goes beyond the facts in *Williams* and is clearly dicta. Furthermore, *Williams* says *"no* trustee ... has the power under the Code to assert general causes of action, such as alter ego claims, *on behalf of the bankrupt estate's creditors";* thus, it addresses only claims brought by a trustee as a representative of creditors—not claims brought by the trustee or debtor to recover property of the estate.

In deciding whether to extend the holding in *Williams* to the case at bar, the Court should look to the reasoning underlying the holding. The *Williams* Court relied heavily on *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), in which the Supreme Court held that a reorganization trustee under Chapter X of the 1898 Bankruptcy Act had no standing to assert, on behalf of the holders of the debtor's debentures, claims of misconduct against their indenture trustee. In *Caplin,* the Court cites three factors relevant to its decision to deny standing to the bankruptcy trustee. Following *Caplin,* the Ninth Circuit reviewed the three factors and found them to apply with equal force to the facts in *Williams.* First, the *Williams* Court found that despite the assignment of the claims to the trustee, the investors remained the real parties-in-interest because the bankruptcy estate would not benefit from the prosecution of the claims, apart from defraying administrative expenses; second, the Court found that the corporate debtor had no claim of its own to assert against the defendant; and third, the Court found that since not all investors assigned their claims to the trustee, there remained the potential for inconsistent actions by those who did not assign, and the trustee's interests could conflict with those of the non-assigning investors, whose interests the trustee had a duty to protect. *Williams v. California 1st Bank,* 859 F.2d 664, 667 (9th Cir.1988).

None of the three factors applies to the assertion of alter ego claims on behalf of the bankruptcy estate in the case at bar. First, Debtor's estate is the true party-in-interest in a successful prosecution of an alter ego

claim against Debtor's principal, in that Debtor's estate would benefit directly from the successful prosecution or settlement of the claim; second, the estate has its own alter ego causes of action, in that the factual basis alleged by SG for piercing Debtor's corporate veil is that Debtor's principal diverted corporate assets for his personal use, thus injuring the corporation itself; and third, insofar as the alter ego claims vest exclusively with the estate, and all creditors are bound by outcome of the estate's claim, there is no potential for inconsistent actions. Therefore, this Court declines to extend the holding in *Williams* to the case at bar.

## B. California State Law Permits a Corporation to Pierce its Own Corporate Veil.

Whether a claim belongs to the creditors of a corporation or to the corporation, for the purpose of deciding who has standing to assert it, is a question of state law. Under California law, under which Debtor is incorporated, a corporation may pierce its own corporate veil if equity demands. *Stodd v. Goldberger*, 73 Cal.App.3d 827, 141 Cal.Rptr. 67 (1977). In *Stodd*, a bankruptcy trustee for a corporate debtor sought to pierce the corporate veil and assert alter ego claims against the debtor's joint venturers. The trial court dismissed the trustee's complaint for failure to allege damage to the corporate debtor, but granted the plaintiff fifteen days' leave to amend its complaint to include such an allegation. In so doing, the *Stodd* court recognized that if injury to the corporation can be alleged and proven, the corporation may pierce its own corporate veil and assert alter ego claims against its shareholders. The Court of Appeal explicitly restates the trial court's judgment which it affirms:

"[The trial court's] ruling ... was that ... plaintiff, as trustee in bankruptcy of a bankrupt corporation, cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to the right of action in it against defendants. In the absence of any such allegation, the asserted cause of action belongs to each creditor individually, and plaintiff is not the real party in interest as required by Code of Civil Procedure section 367."

*Id.* 141 Cal.Rptr. at 71.

As SG points out, *Stodd* distinguishes between two different alter ego claims, one alleging "injury to the corporation giving rise to a right of action in it against defendants" and another where "causes of action belong to each creditor individually." *Id.* at 71. It is true that California law recognizes two kinds of alter ego claims, one where a creditor attempts to pierce the corporate veil and the other where the corporation pierces its own corporate veil. Nevertheless, in the context of bankruptcy, only the Debtor or Trustee has standing to assert the alter ego claim where injury to the corporation is alleged. Debtor's exclusivity to assert the claim follows from the conclusion that alter ego claims are property of the bankrupt estate. Each creditor has a claim on the property of the estate, subject to the priorities of the Bankruptcy Code, but property of the estate does not belong to any creditor individually. As the Court in *Kalb* makes clear, the estate is the proper party to assert an alter ego claim, and creditors are bound by the outcome of the estate's action, "if the debtor's claim is a general one, with no particularized injury arising from it, and if the claim could have been brought by any creditor of the debtor." *Kalb, supra,* 8 F.3d at 132.

In the case at bar, SG alleges that Debtor's principal misappropriated for his own benefit assets belonging to the bankrupt corporation, to the detriment of the estate and all of Debtor's creditors, rather than any individual creditor. Thus, Debtor is the proper party to assert alter ego claims, and all of Debtor's creditors are bound by the outcome of the estate's action.

## IV. CONCLUSION

This Court's review of applicable law compels the conclusion that Debtor has alter ego claims against Donald Davey, Debtor's principal, that these alter ego claims are property of the bankruptcy estate, and that Debtor's creditors are barred from bringing such claims.

This memorandum of decision contains the Court's findings of fact and conclusions of law. Counsel for the Debtor shall lodge and serve a proposed order consistent with this memorandum of decision.